# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| OLE NILSSEN and GEO FOUNDATION, LTD., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 04 C 5363 |
| | ) | |
| v. | ) | |
| | ) | |
| WAL-MART STORES, INC., COSTCO, WHOLESALE CORP., HOME DEPOT, INC., MENARD, INC., LOWE'S HOME CENTERS, INC., IKEA ILLINOIS, LLC, TRUSERV CORP., and ACE HARDWARE CORP., | ) | Judge Robert Gettleman |
| | ) | Magistrate Judge Martin Ashman |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' JOINT PETITION FOR
## REASONABLE ATTORNEYS' FEES AND EXPENSES

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................1

III.    DEFENDANTS' REASONABLE ATTORNEYS' FEES AND EXPENSES.................3

        A.      Determining the Lodestar ...................................................................4

        B.      Defendants' Attorneys' Fees ...............................................................6

                1.      Nilssen should reimburse Defendants for all of
                        the fees incurred in defending this litigation.............................6

                2.      The hours expended by Defendants' attorneys are reasonable ...............10

                3.      Defendants' attorneys' hourly rates are reasonable ...............................11

        C.      Expenses................................................................................................11

        D.      Prejudgment and Post-Judgment Interest.............................................13

IV.     CONCLUSION ................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374 (Fed. Cir. 1994) ........................ 12

*Antonious v. Spalding & Evenflo Cos.,* 275 F.3d 1066 (Fed. Cir. 2002) ....................................... 8

*Beckman Instruments, Inc. v. LKB Produkter AB*, No. 85CV3133, 1990 U.S. Dist.
    LEXIS 18494, (D. Md. Aug. 9, 1990) .................................................................................... 14

*Blanchard v. Bergeron,* 489 U.S. 87 (1989) ................................................................................... 4

*Blum v. Stenson,* 465 U.S. 886 (1984) ............................................................................................ 5

*Brasseler, U.S.A., L.P. v. Stryker Sales Corp.*, 267 F.3d 1370 (Fed Cir. 2001) ........................ 6, 7

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, No. 95CV8833, 2002 U.S.
    Dist. LEXIS 13706 (S.D.N.Y. July 25, 2002) ................................................................... 8, 13

*Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573 (Fed. Cir. 1983) .......................... 10, 11

*City of Burlington v. Dague,* 505 U.S. 557 (1992) ......................................................................... 4

*Chambers v. Nasco, Inc.,* 501 U.S. 32, 46, 50 115 L. Ed. 2d 27 (1991) ...................................... 12

*Denius v. Dunlap*, 330 F.3d 919 (7th Cir. 2003) ............................................................................ 5

*Evident Corp. v. Church & Dwight Co., Inc.*, No. 3:97CV3275, 2003 U.S. Dist.
    LEXIS 26296 (D.N.J. June 30, 2003), *aff'd*, 399 F.3d 1310 (Fed. Cir. 2005) .................. 7, 10

*Farrar v. Hobby,* 506 U.S. 103 (1992) ........................................................................................... 5

*Fox Industries, Inc. v. Structural Preservation Systems, Inc.*, 922 F.2d 801
    (Fed. Cir. 1990) ................................................................................................................ 14-15

*Gardiner v. Gendel*, 727 F.Supp. 188 (E.D.N.Y. 1989) .............................................................. 13

*General Motors Corp. v. Devex Corp.*, 461 U.S. 648 (1983) ...................................................... 14

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) .................................................................................... 5

*Howes v. Med. Components, Inc.*, 761 F.Supp. 1193 (E.D. Pa. 1990) ......................................... 12

*Jaffee v. Redmond*, 142 F.3d 409 (7th Cir. 1998) .......................................................................... 6

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ................................... 5

*Junker v. Eddings*, 396 F.3d 1359 (Fed. Cir. 2005) ...................................................................4

*Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056 (Fed. Cir. 1983) .......................................4, 11

*Lampi Corp. v. Am. Power Prods., Inc.*, No. 93CV1225, 2004 U.S. Dist.
LEXIS 14049 (N.D. Ill. July 20, 2004) ................................................................................14

*Mathis v. Spears*, 857 F.2d 749 (Fed. Cir. 1988) ...............................................4, 7, 11, 12, 13, 15

*Morton Int'l, Inc. v. Cardinal Chemical Co.*, 959 F.2d 948 (Fed. Cir. 1992),
*vacated on other grounds,* 508 U.S. 83 (1993) .....................................................................7

*Nilssen v. Osram Sylvania, Inc.*, Case No. 01CV3585, 2007 U.S. Dist. LEXIS
5792 (N.D. Ill. Jan. 23, 2007) ..............................................................................................8

*Nilssen v. Osram Sylvania, Inc.,* 528 F.3d 1352 (Fed. Cir. 2008) .................................................8

*Nilssen v. Osram Sylvania, Inc.*, 440 F. Supp. 2d 884 (N.D. Ill. 2006) .......................................2

*Oxford Sys., Inc. v. CellPro, Inc.,* 45 F. Supp. 2d 1055 (W.D. Wash. 1999) ...............................8

*Perricone v. Medicis Pharm. Corp.,* 432 F.3d 1368 (Fed. Cir. 2005) ...........................................4

*Phonometrics, Inc. v. Northern Telecom, Inc.,* No. 93CV6561, 1998 U.S. Dist.
LEXIS 23020 (S.D. Fla. Dec. 18, 1998) ...............................................................................9

*PPG Industries, Inc. v. Celanese Polymer Specialties Co.,* 840 F.2d 1565
(Fed. Cir. 1988) .....................................................................................................................5

*Seal-Flex, Inc. v. W.R. Dougherty & Assocs., Inc.*, 254 F. Supp. 2d 647
(E.D. Mich. 2003) ................................................................................................................14

*Serio-US Indus. v. Plastic Recovery Techs. Corp.,* 459 F.3d 1311 (Fed. Cir. 2006).....................4

*Special Devices, Inc. v. OEA, Inc.,* 269 F.3d 1340 (Fed. Cir. 2001) ............................................4

*SunTiger, Inc. v. Scientific Research Funding Group,* 9 F. Supp. 2d 601
(E.D. Va. 1998), *aff'd,* 194 F.3d 1335 (Fed. Cir. 1999).........................................................5

*Takeda Chem. Indus. Ltd. v. Mylan Labs., Inc.*, No. 1:03CV8253, 2007 U.S.
Dist. LEXIS 19614 (S.D.N.Y. Mar. 21, 2007) .......................................................8, 9, 12, 15

*Thompson v. Gomez*, 45 F.3d 1365 (9th Cir. 1995) ...................................................................10

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.,* 205 F.3d 1219 (10th Cir. 2000) .................5

*View Eng'g, Inc. v. Robotic Vision Sys.,* 208 F.3d 981 (Fed. Cir. 2000) ......................................8

*Water Technologies Corp. v. Calco, Ltd.*, 709 F. Supp. 821 (N.D. Ill. 1989)..............................14

## STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 54(d) ...................................................................................................11

28 U.S.C. § 1821(b) ....................................................................................................12

28 U.S.C. § 1920..........................................................................................................11

28 U.S.C. § 1961.....................................................................................................14, 15

35 U.S.C. § 285 .........................................................................................................3, 11

This Court granted Defendants' Motion for Attorneys' Fees and Costs, having found this case exceptional under section 285 of the Patent Act.  (Dkt. No. 241).  Pursuant to the Court's November 24, 2008 minute order (Dkt. No. 242), Defendants, Wal-Mart Stores, Inc., Costco Wholesale Corp., Lowe's Home Centers, Inc. and IKEA Illinois, LLC (collectively "Defendants") are submitting this petition for their respective reasonable attorneys' fees and expenses.

## I.    INTRODUCTION

The foundation of this lawsuit was seven patents that plaintiffs Ole Nilssen and the Geo Foundation, Ltd. (collectively "Nilssen") obtained and/or maintained through deceit.  Defendants should not have been saddled with the four and a half years of costly litigation.  While the Courts' findings of unenforceability of Nilssen's patents due to inequitable conduct vindicate Defendants' legal position, Defendants are also entitled to be fully compensated for their reasonable fees and expenses of defending against Nilssen's meritless claims.  To compensate Defendants for their losses, the Court should award Defendants all of their reasonable attorneys' fees and expenses incurred in this case.

In order to avoid unnecessary duplication and for the convenience of the Court, all four Defendants submit this joint petition for fees and expenses, rather than file four separate petitions.  The individual Defendants' fees and expenses are summarized and supported in the following declarations, filed concurrently herewith:

| DEFENDANT | DECLARANT |
|---|---|
| IKEA Illinois, LLC | Margaret M. Duncan |
| Lowe's Home Centers, Inc. | Tracy Millsaps |
| Wal-Mart Stores, Inc. | Gary Smith |
| Costco Wholesale Corp. | Anthony J. Fitzpatrick |

## II.    BACKGROUND

On August 13, 2004, Nilssen filed this action accusing Defendants of infringing U.S. Patent Nos. 4,857,806, 5,233,270, 5,343,123, 5,510,680, 5,510,681, 5,341,067 and 6,172,464. (Dkt. No. 1).  In late 2004, Defendants filed their Answers and Counterclaims.  (Dkt. No. 17, 32,

and 34).  During the pendency of this lawsuit, the respective Defendants' litigation teams reviewed and investigated Nilssen's infringement contentions, investigated and developed their non-infringement, invalidity and unenforceability defenses, engaged in claim construction proceedings, and engaged in substantial discovery involving voluminous document production and document review, interrogatories and interrogatory responses.

Defendants also engaged in substantive briefing on numerous motions during this multi-year litigation.  Nilssen was particularly aggressive during discovery, having filed two motions to compel against three defendants.  (Dkt. Nos. 70 and 86).  In February 2006, Defendant IKEA Illinois on behalf of Defendants filed a motion to stay pending the disposition of a bench trial in the co-pending *Nilssen v. Osram* litigation, which commenced on February 6, 2006, and the dispositions of reexaminations of six of the seven asserted patents by the United States Patent and Trademark Office.  (Dkt. Nos. 90 & 96).  Following briefing on that motion which Nilssen opposed, the Court entered an order staying the case.  (Dkt. No. 107).

During the stay, a six-day bench trial was held in the related case Nilssen v. Osram Sylvania, Inc.  On July 6, 2006, Judge Darrah issued a decision in that related case declaring six of the seven patents asserted in this case to be unenforceable due to Nilssen's inequitable conduct.  *Nilssen v. Osram Sylvania, Inc.*, 440 F. Supp. 2d 884 (N.D. Ill. 2006).  On August 25, 2006, IKEA filed a motion for summary judgment, joined by the other Defendants, seeking dismissal of all of Nilssen's patent infringement claims based on unenforceability of the patents due to Nilssen's inequitable conduct.  (Dkt. Nos. 114, 122 and 123).  In its response to the motion, filed January 4, 2007, Nilssen did not oppose dismissal of Nilssen's infringement claims directed to five of the six patents that Judge Darrah previously found unenforceable, but opposed the motion with respect to one of the asserted patents that Judge Darrah found unenforceable and as to a second patent that was not included in the *Osram* litigation.  (Dkt. No. 135).

On March 16, 2007, the Court entered an order granting partial summary judgment on five of the asserted patents (Dkt. No. 166).  Following supplemental briefing (Dkt. Nos. 182 and

186), on March 17, 2008, the Court granted summary judgment on the two remaining patents, based on the Court's finding of unenforceability due to Nilssen's inequitable conduct. (Dkt. No. 192). Thus, the Court entered final judgment on March 17, 2008 disposing of each of Nilssen's patent infringement claims based on inequitable conduct. (Dkt. No. 193). Nilssen chose not to appeal this decision.

During the summer and fall of 2008, the parties briefed Defendants' Motion for Attorneys' Fees and Expenses[1] (Dkt. Nos. 195, 204, 211, 222, 223, 228, 232, and 238) and, on November 24, 2008, the Court entered a Memorandum Opinion and Order finding this case to be exceptional under 35 U.S.C. § 285 and granting Defendants their reasonable attorneys' fees and nontaxable expenses.

During the ensuing months and in the spirit of Local Rule 54.1, Defendants sought to cooperate with Nilssen in an attempt to reach resolution on their respective requests for attorneys' fees or, at the least, narrow the areas of contention. For example, Defendants shared with Nilssen the billing rates of their trial counsel, and Nilssen stipulated to the reasonableness of all Defendants' counsels' hourly billing rates. (Dkt. No. 252). Each Defendant also furnished Nilssen with copies of their respective invoices detailing the time and expense charges each incurred during the pendency of this lawsuit. Although Nilssen made offers to each Defendant regarding reimbursable fees, none of which were acceptable, Nilssen provided very few specific objections to any particular time or expense entries from Defendants' monthly invoices, as Local Rule 54.1 requires.

## III.    DEFENDANTS' REASONABLE ATTORNEYS' FEES AND EXPENSES

An award of attorneys' fees in patent infringement litigation is authorized by 35 U.S.C. § 285 ("Section 285"), which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Federal Circuit law controls the determination

---

[1] Some Defendants also submitted a bill of costs, some of which were challenged and required further briefing. (Dkt. Nos. 198, 201-02, 207, 209, 212, 214, 216, 221).

of reasonable attorneys' fees under Section 285. *Special Devices, Inc. v. OEA, Inc.,* 269 F.3d 1340, 1343 (Fed. Cir. 2001); *Serio-US Indus. v. Plastic Recovery Techs. Corp.,* 459 F.3d 1311, 1321 (Fed. Cir. 2006). The Federal Circuit has emphasized that a reasonable attorney fee is "a determination that lies primarily within the discretion of the district court," which may "consider all the relevant circumstances in a particular case." *Junker v. Eddings*, 396 F.3d 1359, 1365-66 (Fed. Cir. 2005); *Perricone v. Medicis Pharm. Corp.,* 432 F.3d 1368, 1380-81 (Fed. Cir. 2005) (citation omitted). Thus, "the district court's inherent equitable power and informed discretion remain available in determining the level of exceptionality arising out of the offender's particular conduct, and in then determining, in light of that conduct, the compensatory quantum of the award, including the amount of attorneys' fees, what, if any, expenses shall be awarded, and the rate of prejudgment interest, if any, on the award." *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988).

In granting Defendants' motion for attorneys' fees, this Court already found that it would be unjust for Defendants to bear the costs of this litigation. The Court is also familiar with the work done by Defendants' counsel and the challenges presented in defending against Nilssen's shifting litigation strategies.

A.      **Determining the Lodestar.**

In determining reasonable attorneys' fees, a court uses a hybrid lodestar approach. This approach begins with calculating the lodestar amount, by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for attorneys and paralegals. *City of Burlington v. Dague,* 505 U.S. 557, 559 (1992); *Blanchard v. Bergeron,* 489 U.S. 87, 94 (1989); *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1068 (Fed. Cir. 1983). While there is a "strong presumption" that the lodestar is reasonable, *City of Burlington,* 505 U.S. at 562 (citation omitted), district courts may "adjust [the] lodestar calculation by other factors." *Blanchard*, 489 U.S. at 94. "[T]he most critical factor" in determining the reasonableness of a

4

fee award "is the degree of success obtained." *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (citation omitted).

Consideration may also be given to the experience, reputation and ability of the attorneys, as well as to the difficulty of the issues presented and the amount at stake in the litigation. *Hensley v. Eckerhart,* 461 U.S. 424, 429-430 n.3 (1983) (citing the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-719 (5th Cir. 1974)). A request for attorneys' fees "should not result in a second major litigation," but the district court should provide a "concise but clear explanation of its reasons for the fee award." *Hensley,* 461 U.S. at 437.

To aid the court's calculation of the lodestar, the prevailing party must provide contemporaneous time records, affidavits and other materials to support its application for the amount of hours expended. *PPG Industries, Inc. v. Celanese Polymer Specialties Co.,* 840 F.2d 1565, 1570 (Fed. Cir. 1988). Ordinarily, a reasonable hourly rate for attorneys' fees is a rate that is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[2] *Blum v. Stenson,* 465 U.S. 886, 896 n.11 (1984). "The attorneys actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003).

Here, all parties selected counsel experienced in patent litigation. Nilssen has stipulated that it does not challenge any of the hourly rates of Defendants' counsel. (Dkt. No. 252).

---

[2] While the community that a district court looks to for the lodestar hourly rate is normally the district in which the court sits, courts have concluded that assessing hourly rates in complex patent cases requires considering the broader legal market given the specialized nature of the practice. *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.,* 205 F.3d 1219, 1234 (10th Cir. 2000) (When determining the appropriate rate to apply to the reasonable hours, "the district court should base its hourly rate award on what the evidence shows the market commands for . . . analogous litigation."). Because "[p]atent law is a specialized area and requires special expertise . . . hourly rates are somewhat higher than those of general practitioners." *SunTiger, Inc. v. Scientific Research Funding Group,* 9 F. Supp. 2d 601, 608 (E.D. Va. 1998), *aff'd,* 194 F.3d 1335 (Fed. Cir. 1999).

**B.** **Defendants' Attorneys' Fees.**[3]

Each Defendant requests total attorneys' fees in the following amounts, which represent

fees through February 28, 2009:

| IKEA Illinois | $1,104,712.27 |
|---------------|---------------|
| Lowe's Home Centers | $879,781.49 |
| Wal-Mart Stores | $483,925.36 |
| Costco | $700,826.89 |

These figures represent the reasonable hours expended by each of the Defendants' attorneys in

connection with this litigation, through February 2009, multiplied by each Defendants' counsel's

reasonable rates for those hours, as set forth in the Defendants' declarations, filed concurrently

herewith.[4]  These declarations include summary tables illustrating the hours billed and the rates

charged.  In addition, partially-redacted copies of Defendants' counsel's billing records for this

litigation are attached to the Defendants' respective declarations to substantiate these hours.

**1.** **Nilssen should reimburse Defendants for all of**
**the fees incurred in defending this litigation.**

Defendants are entitled to fees and expenses for their entire defense of this lawsuit.  In

*Brasseler, U.S.A. I., LP v. Stryker Sales Corp.*, 267 F.3d 1370 (Fed. Cir. 2001), the Federal

Circuit rejected a patentee's argument that the prevailing defendant should only recover the fees

related to inequitable conduct, and ruled that the defendant properly recovered fees on all

defenses, including some that were never adjudicated:

> Stryker would not have incurred any of the fees generated in defense of this suit
> had Brasseler not committed inequitable conduct in pursuit of its patent and had it
> not filed a claim for infringement of that patent, known by Brasseler to have been
> improperly obtained. Thus, Brasseler should be charged with the expense of
> defending against this frivolous lawsuit. Furthermore, the district court's failure to
> reach the remaining defenses raised by Stryker, because they were mooted by its

---

[3] These figures only reflect attorneys' fees and not expenses, which are addressed below.
[4] Defendants respectfully reserve the right to update these amounts with their fees and costs, plus interest,
through the date that these matters are finally resolved, since fees and costs for Defendants' fee petition
are equally recoverable.  *See, e.g., Jaffee v. Redmond*, 142 F.3d 409, 412, 417-418 (7th Cir. 1998).

inequitable conduct finding, cannot be a basis for denying fees relating to those defenses.

*Brasseler,* 267 F.3d at 1386; *see also Mathis,* 857 F.2d at 753 (noting that "[t]he purpose of Section 285 is to reimburse a party injured when forced to undergo an 'exceptional' case."); *Evident Corp. v. Church & Dwight Co., Inc.*, No. 3:97CV3275, 2003 U.S. Dist. LEXIS 26296, at *25 (D.N.J. June 30, 2003), *aff'd*, 399 F.3d 1310 (Fed. Cir. 2005) (awarding to defendant who prevailed on inequitable conduct all its reasonable attorneys' fees in defending the action, noting that "[w]hen a prevailing party has obtained excellent results, his attorney should recover a *fully compensatory fee*") (quoting *Mathis*, 857 F.2d at 756) (emphasis added).

Here, Defendants should never have had to undergo this litigation, since the patents at issue were procured and maintained through deceit. Only an award of all of Defendants' fees and expenses can approach fair compensation for the wrong suffered. The amounts requested through March 2009 represent the hours expended by Defendants' counsel over the course of this litigation during a five-year period.

The number of billing personnel and the total hours listed in the Defendants' respective declarations are reasonable for this complex litigation. Until Judge Darrah declared most of Nilssen's patents to be unenforceable, the technological substance of Nilssen's patent infringement claims and Defendants' invalidity defenses were very much in play, requiring in-depth investigation and evaluation of the technology in general, Nilssen's patents, the accused products, and the pertinent prior art. The parties engaged in substantive discovery on these issues through the time the Court issued the stay in this case in March 2006. Because Defendants could not anticipate that Judge Darrah would ultimately declare Nilssen's patents unenforceable until he rendered his decision in July 2006, Defendants continued developing their non-infringement and invalidity defenses after the Court entered its stay order.

The Federal Circuit has observed that "[b]ringing a patent action is an expensive and time-consuming endeavor, as is defending one." *Morton Int'l, Inc. v. Cardinal Chemical Co.,* 959 F.2d 948, 954 (Fed. Cir. 1992), *vacated on other grounds,* 508 U.S. 83 (1993); *see also*

*Antonious v. Spalding & Evenflo Cos.,* 275 F.3d 1066, 1075 (Fed. Cir. 2002) ("A single [patent] claim [at issue] may occasion the expenditure of hundreds or thousands of hours, as opposing counsel try to verify or refute the allegations and theories."); *View Eng'g, Inc. v. Robotic Vision Sys.,* 208 F.3d 981, 986 (Fed. Cir. 2000) (A "patent suit can be an expensive proposition" and "[d]efending against baseless claims of infringement subjects the alleged infringer to undue costs.").

Accordingly, multi-million dollar fee awards are commonplace in patent litigation. *See, e.g., Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, No. 95CV8833, 2002 U.S. Dist. LEXIS 13706, at *16 (S.D.N.Y. July 25, 2002) (awarding almost $27 million in attorneys' fees and disbursements under Section 285, plus $6 million for expert fees and prejudgment interest); *Takeda Chem. Indus. Ltd. v. Mylan Labs., Inc.*, No. 1:03CV8253, 2007 U.S. Dist. LEXIS 19614 (S.D.N.Y. Mar. 21, 2007) (awarding almost $17 million in patent case including expert fees and interest); *Oxford Sys., Inc. v. CellPro, Inc.,* 45 F. Supp. 2d 1055, 1057-58 (W.D. Wash. 1999) (discussing three-year long patent litigation in which the district court awarded "attorneys' fees and costs in the amount of $ 8.7 million"). Indeed, in *Nilssen v. Osram Sylvania, Inc.*, Case No. 01CV3585, 2007 U.S. Dist. LEXIS 5792 (N.D. Ill. Jan. 23, 2007), Judge Darrah entered an award of almost $6 million in fees and expenses, which was affirmed by the Federal Circuit. *Nilssen v. Osram Sylvania, Inc.,* 528 F.3d 1352 (Fed. Cir. 2008). Here, Defendants' respective fees and expenses for which each is seeking reimbursement is a small fraction of such patent infringement attorneys' fee awards.

According to the American Intellectual Property Law Association, the average total fees and expenses incurred by a defendant in patent infringement cases filed in Chicago through the end of discovery is about $1,691,000. (Declaration of Margaret M. Duncan, Exhibit O, AIPLA, Report of the Economic Survey 2007, I-90). The average fee and expense total for patent cases

filed in Chicago through the end of the litigation is about $2,515,000.[5]  (*Id.* at I-91).  Here, each of the Defendants' fees and expenses are significantly less than the average fees for Chicago patent cases through the end of discovery and far less than the average total fees and expenses through the end of the litigation.

Moreover, Defendants' fees are reasonable in light of the amount at stake in this case. The entire value of Defendants' compact fluorescent light bulb business was at stake in this case. This litigation potentially implicated scores of millions of dollars in revenue for each Defendant from before the outset of the litigation through the remaining life of the Nilssen patents and also posed a significant risk of disruption of Defendants' relationships with their customers for lighting products.  Defendants' respective attorneys' fees and expenses thus represent a tiny fraction of the amount at stake for each Defendant in this litigation.  Given the high stakes in this case, Defendants' attorneys' fees and expenses are more than justified and reasonable.  *See Phonometrics, Inc. v. Northern Telecom, Inc.,* No. 93CV6561, 1998 U.S. Dist. LEXIS 23020, at *19 (S.D. Fla. Dec. 18, 1998) ("Defendants' potential liability in terms of damages and lost profits upon successful prosecution of Plaintiff's action would certainly dwarf the legal fees incurred by Defendants in this case.  Thus, viewed in relation to Defendants' potential liability, Defendants' attorneys' fees are reasonable."), adopted, 1999 U.S. Dist. LEXIS 22249 (S.D. Fla. Aug. 10, 1999); *Takeda*, 2007 U.S. Dist. LEXIS 19614 at *22 (finding that fees and expenses in excess of $17 million were reasonable in view of the billions of dollars in potential future sales at stake).

---

[5] These averages are for cases where the amount at risk, in terms of potential damages, is between $1 million and $25 million.  For cases involving more than $25 million at risk, the average fees incurred in Chicago patent cases through the end of discovery is about $3,424,000 and the average total fees and expenses incurred through the end of the litigation is about $5,267,000. (Duncan Decl., Exhibit O, at I-91).

## 2. The hours expended by Defendants' attorneys are reasonable.

The amounts of reasonable hours of attorney time each Defendant's counsel spent defending this case are identified in the Defendants' respective declarations.  These hours only include hours worked through February 28, 2009.[6]  Defendants are not requesting reimbursement for all of the hours actually billed by Defendants counsel and other legal personnel throughout this lawsuit. To streamline this request, some Defendants have eliminated certain legal professionals from their fee requests whose work was billed to Defendants over the tenure of the case, but whose involvement in the case was minimal or sporadic.  Some Defendants have eliminated other time, such as attorney time incurred in monitoring the six-day bench trial in the *Osram* case.

In addition to the initial technical analysis underlying Defendants' non-infringement and invalidity defenses, this case necessitated substantial fact discovery, claim construction activities, and motion practice to finally obtain dismissal of Nilssen's infringement claims and an award of attorneys' fees.  For instance, Defendants prepared and served numerous written discovery requests and responses, developed non-infringement charts and invalidity charts, construed disputed claim terms, engaged a technical consultant to assist in developing their non-infringement and invalidity positions and investigated numerous pieces of prior art that potentially invalidated the patents.  Defendants also expended time and resources in briefing a motion for summary judgment, responses to motions to compel, a motion to stay the case and a motion for a finding of exceptional case and attorneys' fees.

---

[6] Defendants are also entitled to compensation for work done after February 28, 2009, including attorneys' fees expended on this fees petition.  *See Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) (interpreting attorneys' fees to "include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit"); *Thompson v. Gomez*, 45 F.3d 1365, 1367 (9th Cir. 1995) (prevailing party entitled to "fees on fees").  Defendants will file a supplemental report setting forth the fees incurred in the preparation of this fee petition.  *Evident*, 2003 U.S. Dist. LEXIS 26296, *22, n. 10 (permitting a separate filing for fees incurred in preparing fee petition).

### 3.     Defendants' attorneys' hourly rates are reasonable.

Under the lodestar approach, after determining a reasonable number of hours spent on the litigation, the Court multiplies those hours by a reasonable hourly rate.  The rates for each member of the respective Defendants' teams are set forth in Defendants' respective declarations. Defendants' attorneys' actual hourly rates are reasonable, and Nilssen has stipulated that he does not challenge the reasonableness of Defendants' counsel's billing rates.

### C.     Expenses.

35 U.S.C. § 285 and other applicable law permit defendants to recoup expenses, including non-taxable costs.  In *Cent. Soya Co, Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573 (Fed. Cir. 1983), the Federal Circuit stated that:

> the purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit.  We interpret attorney fees to include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit.

*Id.* at 1578.  Accordingly, the *Cent. Soya* court found that the trial court's "award of expenses was properly within the scope of Sec. 285."  Id.  See also, *Lam, Inc. v. Johns-Manville*, 718 F.2d 1056, 1069 (Fed. Cir. 1983) (holding that an attorneys' fee award includes "disbursements that were necessary for the case) and *Mathis*, 857 F.2d at 757, holding that "it would be inconsistent with the intent of §285 to limit prevailing party Hydro to something less than the fees and expenses to which it was subjected by Mathis.")

Some of the Defendants in this action previously sought and obtained orders awarding taxable expenses under Rule 54(d) and 28 U.S.C. §1920, and those taxable costs are not reflected in the expenses sought in the present submissions.[7]  Defendants are also entitled, under both §285 and this Court's inherent powers, to recoup their non-taxable expenses incurred in the defense of Nilssen's baseless claims.  Those expenses include, *inter alia*, outlays for

---

[7] Wal-Mart's request for taxable expenses remains pending before the Court.

computerized research, telephone, postage, travel and lodging costs, prior art searches, and payments made to technical consultants who assisted counsel in defense of Nilssen's wrongful suit.  Defendants therefore request total expenses in the following amounts through February 28, 2009:

| | |
|---|---|
| IKEA Illinois | $67,022.95 |
| Lowe's Home Centers | $139,733.99 |
| Wal-Mart Stores | $30,188.89 |
| Costco | $25,559.73 |

Defendants expect that Nilssen may object to defendants' request for reimbursement of fees paid to their technical consultants.  However, while the Federal Circuit has ruled that §285 does not provide for recovery of fees for expert witnesses beyond the witness fees specified in 28 U.S.C. § 1821(b) (*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 377 (Fed. Cir. 1994)), defendants are not seeking fees for "witnesses" as neither of the two consultants retained by defendants' counsel appeared or testified as witnesses.  Rather, they acted as consultants assisting defense counsel.

Moreover, even apart from Section 285, this Court has inherent power to award defendants fees and expenses for their technical consultants.  Indeed, it is well within the Court's power to impose sanctions for Nilssen's inequitable conduct in obtaining and maintaining his patents and his bad faith assertion of patents he knew or should have known were unenforceable. *Id.* at 378; *Mathis*, 857 F.2d at 758-59; *Chambers v. Nasco, Inc.*, 501 U.S. 32, 46, 50 115 L. Ed. 2d 27 (1991).  Courts often award expert fees in cases involving inequitable conduct and questionable litigation tactics.  *Mathis,* 857 F.2d at 759; *Takeda*, 2007 U.S. Dist. LEXIS 19614 at *42.  Defendants' expert witnesses were reasonably necessary to make the issues easier for the Court and a jury to understand.  *Howes v. Med. Components, Inc.*, 761 F.Supp. 1193, 1199 (E.D. Pa. 1990) (awarding expenses for expert witnesses and jury consultant because such fees were expended to make the issues easier for the jury to understand).

12

D.      **Prejudgment and Postjudgment Interest.**

Nilssen's long pattern of inequitable conduct also warrants an award of prejudgment interest. *Mathis*, 857 F.2d at 760-61 (holding that a finding of inequitable conduct alone is sufficient to support an award of prejudgment interest); *Gardiner v. Gendel*, 727 F.Supp. 188, 805 (E.D.N.Y. 1989). Here, at any rate, the circumstances go far beyond exceptional. Three courts in this district have unanimously found that Mr. Nilssen and his foundation engaged in a course of conduct over numerous years that constituted a continuous series of fraud and deceit on the Patent Office and ultimately on the Courts. Despite Nilssen's unabashed deceit in obtaining and maintaining his patents, he aggressively sought to enforce them in this Court, in an effort to cripple the CFL lighting industry and extract from the defendants unjustified tribute.

Nilssen's inequitable conduct and bad faith litigation tactics here are far more egregious than one usually finds in reported exceptional cases, which largely involve a failure to disclose a material piece of prior art to the Patent Office. This case involves repeated instances of dishonesty at the Patent Office, sufficient to support the award of expert fees and prejudgment interest. In finding Nilssen liable for attorneys' fees in this case, the Court concluded:

> Far too much judicial resources have been devoted to this losing litigation. Plaintiffs have been found in the *Osram* case to have intentionally failed to inform the PTO of related litigation, made materially false priority claims with the intent to mislead the PTO, misrepresented that Nilssen was entitled to small entity status (allowing him to maintain his patents for far less money that he would otherwise been required) and failed to cite material prior art when prosecuting its patents with the PTO. Plaintiffs' conduct was intentional, material and repeated. If this case isn't exceptional, this court fails to see what is.

(Dkt. No. 243, Nov. 24, 2008 Memorandum Opinion and Order, pp. 3-4)

The Federal Circuit has held that "a district court does have authority, in cases of 'bad faith or other exceptional circumstances,' to award prejudgment interest on the unliquidated sum of an award of [attorneys' fees] under section 285." *Mathis,* 857 F.2d at 761; *Bristol-Myers*, 2002 U.S. Dist. LEXIS 13706 at *45 (awarding prejudgment interest based on fraud and vexatious conduct). Here, Nilssen aggressively prosecuted his infringement claims on patents

that were obtained through deceit, causing Defendants to collectively part with millions of dollars to defend themselves.  Nilssen's refusal to withdraw all patent infringement claims, even after Judge Darrah determined his patents were unenforceable and after Defendants filed their motion for summary judgment, unnecessarily drove up Defendants' fees and expenses. Requiring Nilssen to reimburse Defendants for the attorneys' fees and expenses incurred in this case only partially compensates Defendants for Nilssen's misconduct.  "[A]bsent an award of prejudgment interest, [Defendants] still would have lost the use of the money [they] paid to its counsel during this litigation."  *Beckman Instr., Inc. v. LKB Produkter AB*, No. 85cv3133, 1990 U.S. Dist. 18494, \*33 (D. Md. August 9, 1990) citing *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 653-54 (1983).

Prejudgment interest should be awarded to Defendants at the prime rate and compounded monthly.  *Water Technologies Corp. v. Calco Ltd.*, 709 F.Supp. 821, 826 (N.D. Ill. 1989) (awarding prejudgment interest on attorneys' fees); *Lampi Corp. v. American Power Prods., Inc.*, No. 93CV1225, 2004 U.S. Dist. LEXIS 14049, \* 24 (N.D. Ill. July 20, 2004); *Seal-Flex, Inc. v. W.R. Dougherty & Assoc., Inc.* 254 F.Supp.2d 647, 657 (E.D. Mich. 2003).  Because the Court has to decide the amount of attorneys' fees and expenses to which Defendants are entitled, Defendants have not calculated the amount of prejudgment interest.  Once the Court makes its determination, Defendants will furnish the Court and Nilssen with the prejudgment interest calculation, calculated at the prime rate and compounded monthly.

Defendants are also entitled to postjudgment interest on their attorneys' fees and expenses.  According to 28 U.S.C. § 1961, "[post-judgment] interest shall be allowed on any money judgment in a civil case recovered in a district court . . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield."  Post-judgment interest is correctly calculated "from the date of the judgment establishing the right to the award."  *Fox Indus., Inc. v. Structural Preservation Sys., Inc.*, 922 F.2d 801, 804 (Fed. Cir. 1990).  *See also Mathis,* 857 F.2d at 760 (interpreting 28

14

U.S.C. § 1961 to find that post-judgment "[i]nterest on an attorney fee award . . . runs from the date of the judgment establishing the right to the award, not the date of the judgment establishing its quantum."); *Takeda,* 2007 U.S. Dist. LEXIS 19614 at *44-45.

## IV.   **CONCLUSION**

Because Nilssen effectively held Defendants hostage to his infringement claims, notwithstanding the fraudulent manner in which the patents were obtained, Defendants were forced to extricate themselves from such claims.  Defendants respectfully request that the Court enter an order requiring Nilssen to reimburse Defendants for their reasonable attorneys' fees and nontaxable expenses, plus prejudgment interest at the prime rate, compounded monthly, and post-judgment interest at the rate specified in 28 U.S.C. § 1961.  These fees are reasonable and are justified given the nature of Nilssen's gross misconduct in obtaining and maintaining the patents through fraud.  Defendants also respectfully reserve the right to update the amount of fees they have expended in preparing this fee petition and related matters through the date the fees are actually paid by Plaintiffs, plus interest and costs.

Dated:  April 3, 2009                                   Respectfully submitted,

                                                By:   s/ Margaret M. Duncan
                                                      Margaret M. Duncan
                                                      Krista Vink Venegas
                                                      McDermott Will & Emery LLP
                                                      227 West Monroe Street
                                                      Chicago, Illinois  60606-5096
                                                      Telephone:  312.372.2000
                                                      Fax:  312.984.7700

                                                      Attorneys for Defendants
                                                      IKEA ILLINOIS, LLC

                                                      *and with permission and on behalf of*
                                                      *Defendants Wal-Mart Stores, Inc., Costco*
                                                      *Wholesale Corp., and Lowe's Home*
                                                      *Centers, Inc.*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 3, 2009, I electronically filed **Defendants' Joint Petition for Reasonable Attorneys' Fees and Expenses** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record.  I also certify that I served the following counsel via Federal Express with a copy of **Defendants' Joint Petition for Reasonable Attorneys' Fees and Expenses** and the Declaration of Margaret M. Duncan, together with all exhibits attached thereto:

> Jonathan Hill
> Jenner & Block LLP
> 330 N. Wabash Ave., 40th Floor
> Chicago, IL 60611

/s/ Margaret M. Duncan

Margaret M. Duncan

CHI99 5104970-1.021097.0054