**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| OLE K. NILSSEN and<br>GEO FOUNDATION, LTD., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 04-C-5363 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| WAL-MART STORES, INC., COSTCO | ) | |
| WHOLESALE CORP., HOME DEPOT, | ) | |
| INC., MENARD, INC., LOWE'S HOME | ) | |
| CENTERS, INC., IKEA ILLINOIS, LLC, | ) | |
| TRUSERV CORP., and ACE | ) | |
| HARDWARE CORP., | ) | |
| | ) | |
| Defendants. | ) | |

**GEO FOUNDATION, LTD.'S MEMORANDUM IN SUPPORT
OF ITS RULE 60(B)(4) MOTION FOR RELIEF FROM JUDGMENT**

## INTRODUCTION

As the Court is aware, seven enormously valuable patents covering compact fluorescent lamps ("CFLs")[1] were held unenforceable based on findings that co-plaintiff Ole K. Nilssen ("Nilssen") committed inequitable conduct before the Patent & Trademark Office ("PTO"). As a result, the Court entered judgment against not only Nilssen, but also against his exclusive licensee, co-plaintiff Geo Foundation, Ltd. ("Geo"). Critically, Geo was not found to have committed *any* inequitable conduct. Thus, Geo now seeks vacatur of that judgment to the extent it prevents Geo from enforcing four of the seven patents-in-suit—only those four patents for which Nilssen's conduct undisputedly had no bearing on the validity of any claims. Importantly, those patents include claims whose validity has now been re-affirmed by the PTO in reexamination proceedings, even *after* the PTO was made aware of the inequitable conduct Nilssen was found to have committed.

For at least *five* distinct reasons, the judgment against *Geo* respecting those four patents exceeded judicial authority and must be vacated on "voidness" grounds under Fed. R. Civ. P. 60(b)(4).[2]

**I**. The judgment against Geo exceeded the Court's equitable powers because it *de facto* nullified patents that otherwise could be asserted by a non-culpable party. While the Court certainly has power to bar a cause of action brought by a party found to have "unclean hands" (and the inequitable conduct doctrine purports to be nothing more than the unclean-hands

---

[1] Provided herewith as Exhibit 1 is the expert declaration of Dr. Clifford Kraft attesting to the facts that each CFL, on average over its in-use lifespan, represents a public economic value of over $150, of which more than $80 accrues to the consumer in the form of reduced electricity billings. (Ex. 1 at ¶17). Once all 4.7 billion lamp sockets in the United States, (*see id.* at ¶ 3), are outfitted with CFLs, the total economic value to the public will exceed $700 billion.

[2] A Rule 60(b)(4) motion may be brought "*at any time*," *Margoles v. Johns*, 798 F.2d 1069, 1073 n.6 (7th Cir. 1986) (emphasis added) (internal citation omitted), because "void" judgments are "no judgment[s] at all," *id.*; they are "legal nullities." *United States v. Indoor Cultivation Equip. From High Tech Indoor Garden Supply*, 55 F.3d 1311, 1317 (7th Cir. 1995). As such, a "void" judgment is subject to collateral attack. *Collins v. Foreman*, 729 F.2d 108, 111 (2d Cir. 1984) ("[I]f the judgment is void . . . a collateral attack upon the void judgment may be made in any proceeding in any court where the validity of the judgment comes in issue."); *Lubben v. Selective Service Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir. 1972) ("A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack.").

doctrine applied in the patent context), Geo was **not** found to have had unclean hands, and the Court altogether lacked power in this case to nullify the patent rights underlying Geo's cause of action. *See, e.g.*, *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 175-76 (1965) ("**only the United States may sue to cancel or annul a patent**") (emphasis added).

**II**. The penalty of patent nullification in this case also exceeds judicial authority because it is grossly disproportionate to the gravity of Nilssen's alleged offenses (impliedly deemed immaterial by the PTO), and, therefore, runs afoul of the Excessive Fines Clause of the Eighth Amendment.

**III**. The nullification of patents here further exceeds judicial power for violating the Takings Clause of the Fifth Amendment. The judgment in this case took, without compensation, Geo's valuable and valid patent-property rights, thereby effectively granting to the public a royalty-free license to practice under those patents.

**IV**. The judgment against Geo also rests on a separation-of-powers violation, namely, the judiciary's disregard of the PTO's statutorily authorized rule defining "materiality" in 37 C.F.R. § 1.56 (1992) ("Rule 56"). The misconduct alleged in this case—conduct described by Federal Circuit Judge Newman as "non-culpable prosecution errors," *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1361 (Fed. Cir. 2008) (Newman, J., dissenting)—was not "material" under Rule 56, as amply demonstrated, *inter alia*, by the PTO's refusal to reject claims on such grounds, even *after* learning of Nilssen's alleged inequitable conduct. Equity jurisprudence cannot, as it did here, exceed the limits of judicial powers by wholly disregarding the PTO's definition of "materiality" in a rule promulgated pursuant to Congressional authority. *See, e.g.*, *City of Milwaukee v. Illinois*, 451 U.S. 304, 317-32 (1981).

**V**. Separation of powers was also violated because the judgment resulted from abrogation of the long-standing requirement that an "unclean hands" injury be "immedediate[ly] and necessar[ily] relat[ed]" to the alleged misconduct. *See, e.g.*, *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933). Such a "wrenching departure" from this traditional

equitable principle may only be effected by an act of Congress.  *See, e.g.*, *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 317, 322, 329 (1999).  Proper adherence to traditional equity principles compels the conclusion that defendants here suffered no cognizable injury and therefore lacked standing to obtain judgment against Geo.

## BACKGROUND

In this matter, plaintiffs asserted that defendants infringe 15 different patent claims from seven patents issued to Nilssen.  (*See* Ex. 3).  All patents-in-suit are owned by inventor Nilssen. Effective January 1, 2000, Geo acquired for valuable consideration the exclusive right to enforce Nilssen's patents and to grant sub-licenses thereunder.  (Ex. 2).  For present purposes, Geo seeks to enforce only nine asserted claims from four of the seven patents-in-suit.[3]

During co-pending litigation, namely, *Nilssen v. Osram Sylvania, Inc.*, another judge from this District Court determined six of the seven patents-in-suit in this case to be unenforceable based on findings that Nilssen had committed inequitable conduct in his dealings with the PTO.  440 F. Supp. 2d 884 (N.D. Ill. 2006), *aff'd*, 504 F.3d 1223 (Fed. Cir. 2007) ("*Osram*").  Relevant here are findings that Nilssen committed inequitable conduct by (1) failing to disclose the existence of the *Nilssen v. Motorola, Inc.* litigation ("*Motorola*"), (2) making priority "misclaims," and (3) underpaying patent maintenance fees.  Defendants in this case subsequently obtained a judgment that all seven patents-in-suit are unenforceable for reasons set forth in *Osram*.  Despite finding no misconduct by Geo, this Court entered judgment against both Nilssen **and** Geo.  (Docket Nos. 166 & 192).

As to the particular patent rights now sought to be asserted by Geo, Nilssen's alleged misconduct bore no relation to the validity of any of the nine claims at issue, as made clear by the Federal Circuit's ultimate opinion in *Osram*.  Nondisclosure of *Motorola* was deemed "material" only under a *per se* rule (MPEP § 2001.06(c)) based on a ***possibility*** of future material

---

[3] Specifically, Geo seeks to assert claims 12, 15 and 17 from patent no. 5,233,270 (the "'270 patent"), claims 11, 16 and 17 from patent no. 5,343,123 (the "'123 patent"), claims 9 and 15 from patent no. 5,510,680 (the "'680 patent) and claim 3 from patent no. 6,172,464 (the "'464 patent").

developments. *Osram*, 504 F.3d at 1234. There was, however, no finding or evidence that anything happened in *Motorola* that could affect the validity of any claim. Clearly, the priority "misclaims" "would ***not*** have immediately affected patentability." *Id.* at 1233 (emphasis added). Indeed, there was no possibility of such influence unless Nilssen actually attempted to invoke an incorrect priority date to antedate cited references during prosecution of the affected patents, but no such evidence was offered. With respect to underpaid maintenance fees (which have been successfully corrected, (*see* Ex. 10)), the Federal Circuit acknowledged that "misrepresentation of small entity status is ***not*** strictly speaking inequitable conduct in the prosecution of the patent, as the patent has ***already issued***." *Id.* at 1231 (emphasis added). Tellingly, none of these findings were predicated on breach of the "[d]uty to disclose information material to patentability" specified by Rule 56.

At bottom, even if Nilssen had followed each and every supposed rule that he was found to have violated, there can be no legitimate dispute that all nine claims at issue here would still have been issued in identical form and scope. Indeed, the U.S. Senate Judiciary Committee cited the misconduct findings from *Osram* to be the result of a failure to "giv[e] ***necessary*** consideration to" the relevance of the misconduct to the Examiner's decision of "***whether to allow the patent***." Ex. 4, S. Rep. No. 110-259, at 33, n.155 (2008) (emphasis added). Further, during PTO reexaminations of the four patents at issue, Nilssen provided the PTO with full disclosure of both the district court and Federal Circuit *Osram* opinions that address the inequitable conduct issues. (*See* Ex. 5). While several of those proceedings were vacated prior to their conclusion, the PTO had, prior to such vacatur, re-affirmed the validity of three of the nine claims now sought to be asserted by Geo, namely, claims 15 and 17 of the '270 patent and claim 3 of the '464 patent. (*See* Exs. 6 & 7). And none of the other six asserted claims were rejected in those proceedings on grounds set forth in *Osram*. (*See* Exs. 8 & 9).

## ARGUMENT

Because Geo was not found to have engaged in any misconduct, the judgment against it in this case necessarily rested on the Court's *de facto* nullification of the patents-in-suit. But the

remedy of nullification exceeded the Court's authority and the judgment otherwise violated constitutional mandates (e.g., Article III standing limitations). Accordingly, the judgment against Geo must be vacated pursuant to Rule 60(b)(4).

## I. Patent Nullification Is Not Authorized in Patent Infringement Proceedings.

A patent procured by inequitable conduct has long been regarded to raise important issues of public interest. *United States v. Am. Bell Tel. Co.*, 128 U.S. 315, 369-70 (1888) ("*Bell I*"). When the government has been misled into issuing a patent, "its duty to correct this evil, to recall these patents, to get a remedy for this fraud, is so clear that it needs no argument." *Id*. at 370. It has long been held, however, that the duty (and right) to have such a patent nullified lies exclusively with the government and *not* with any private litigant:

> To grant full protection to the public against a patent obtained by fraud, that patent must be vacated. It has previously been decided that *such a remedy is not available in infringement proceedings, but can only be accomplished in a direct proceeding brought by the government*.

*Hazel-Atlas Glass Co. v. Hartford Co.*, 322 U.S. 238, 251 (1944), *rev'd on other grounds*, *Standard Oil Co. v. United States*, 429 U.S. 17 (1976)) (*citing Bell I*).[4] More recently, the Supreme Court reiterated that, under the current Patent Act, "*only the United States may sue to cancel or annul a patent*," and that "there is *no statutory authority for a private annulment suit*." *Walker Process*, 382 U.S. at 175-76 (emphasis added). This line of controlling Supreme Court authority unequivocally precludes patent nullification in litigation between private parties.

The private litigant's remedy is instead limited by the inequitable-conduct doctrine, which originated with a trilogy of Supreme Court cases decided between 1933 and 1945. *See, e.g.*, *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1315 (Fed. Cir. 2006)[5]. Beginning with its *Keystone Driller* decision in 1933, the Supreme Court first recognized the equitable doctrine of "unclean hands" as a defense warranting *dismissal* of patent infringement

---

[4] *Accord Briggs v. United Shoe Machinery*, 239 U.S. 48, 50 (1915); *United States v. Am. Bell Tel. Co.*, 159 U.S. 548, 555 (1895) ("*Bell II*"); *Mowry v. Whitney*, 81 U.S. 434, 441 (1871).

[5] *Citing Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945); *Hazel-Atlas*, 322 U.S. 238 (1944); and *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933).

actions brought by parties who had engaged in certain unconscionable conduct. 290 U.S. at 244-47. As explained by the Supreme Court, "[t]he guiding doctrine . . . is the equitable maxim that 'he who comes into equity must come with clean hands.' This maxim . . . closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument*, 324 U.S. at 814. As it stands today, the "'inequitable conduct' [doctrine purports to be] ***no more than*** the unclean hands doctrine applied to particular conduct before the PTO." *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 812 (Fed. Cir. 1990) (emphasis added).

But the unclean hands remedy prescribed by *Keystone Driller*, *Precision Instrument* and *Hazel-Atlas* did not literally destroy the patent property and did not otherwise render the patents unenforceable in other litigation brought by a non-culpable party. Instead, "the unclean hands doctrine bar[red] ***only*** the offending party" and "[t]he entire chain of *Keystone* cases . . . shows that the relief for unclean hands targets specifically the misconduct, ***without reference to the property right that is the subject of the litigation***." *Aptix Corp. v. Quickturn Design Sys.*, 269 F.3d 1369, 1376 (Fed. Cir. 2001) (emphasis added).[6] Put another way, "unclean hands" attaches solely to the wrongdoer and not to the property.[7] Because Geo was not found culpable, no "unclean hands" remedy could have been appropriate against it.

Under the circumstances here, the judgment against Geo can only be explained as an act of patent nullification. This case presents the unusual circumstance of an unenforceability judgment against an exclusive licensee not found to have participated in any wrongdoing ***and***, as confirmed by PTO reexamination proceedings, where the wrongdoing had no effect on the

---

[6] Indeed, the very patents at issue in *Keystone Driller* were properly asserted in subsequent litigation against other parties, and the patent right in *Hazel-Atlas* also was left intact. *See Aptix*, 269 F.3d at 1375, 1377. The remedy prescribed in *Precision Instrument* was that of dismissal as well. 324 U.S. at 819.

[7] *See, e.g.*, *Precision Instrument*, 324 U.S. at 815 (unclean hands doctrine "prevents a wrongdoer from enjoying the fruits of his transgression"); JOHN N. POMEROY, POMEROY'S EQUITY JURISPRUDENCE, (Bancroft-Whitney Co., 1905) ("Pomeroy"), § 397 at 657 (attached hereto as Exhibit 13) (the unclean hands doctrine "says that whenever a party, who as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him . . . .").

validity of any claim, (*see supra*, at p. 4). In such a case, the exclusive licensee should, notwithstanding the patent owner's own loss of enforcement rights, be accorded full patent protection because the patent property itself cannot be nullified except in an action brought by the United States. *See Walker Process*, 382 U.S. at 175-76; *Hazel-Atlas*, 322 U.S. at 246 (suggesting "equities [may] intervene[] through transfer of the fraudulently obtained patent . . . to an innocent purchaser"); *Aptix*, 269 F.3d at 1377 (when "the record discloses no misconduct in acquisition of the patent right" the patent "remains a presumptively valid grant of personal property" enforceable by an innocent licensee).[8] Thus, under controlling Supreme Court precedents, the Court lacked power—in this proceeding between ***private*** litigants—to nullify these patents.

The absence of authority to nullify patents necessarily renders "void" the Court's judgment against Geo. "[A] judgment may be void for purposes of Rule 60(b)(4) if the court, although having jurisdiction over the parties and subject matter, entered a decree 'not within the powers granted to it by the law.'" *Indoor Cultivation*, 55 F.3d at 1316.[9] Even where the court's power is conditional, the absence of a necessary legal prerequisite renders void the exercise of such power. *See, e.g.*, *Klaprott v. United States*, 335 U.S. 601, 609 (1949) ("The judgment is

---

[8] The distinction in remedies drawn here is one which would have practical ramifications in a scarce minority of cases (*i.e.*, only those where the licensee lacks unclean hands ***and*** where the inequitable conduct had no bearing on the validity of any claims). In a typical inequitable conduct case (e.g., where anticipatory prior art is deceitfully withheld during prosecution), the entire patent is tainted and all claims are deemed invalid by operation of statute even though some claims may have issued regardless of the misconduct. *See* 35 U.S.C. §288. That is perhaps why the Federal Circuit stated in dictum in *Aptix* that "[e]ven presumably innocent licensees . . . would be properly barred from enforcing [a] patent, had the rights thereunder accrued through inequitable conduct." 269 F.3d at 1377. But the claims Geo seeks to assert did ***not*** "accrue through inequitable conduct." Thus, neither §288 nor most inequitable-conduct cases have any application here. Geo is unaware of any Federal Circuit decision explicitly holding that an innocent exclusive licensee should have its patent cause of action barred as the result of inequitable conduct committed solely by the patent owner and where such conduct had no bearing on the validity of any claims.

[9] *See United States ex rel. Wilson v. Walker*, 109 U.S. 258, 265-66 (1883) (judgment void where court's only authority was to require delivery of decedent's unadministered assets, a decree directing administratix to pay over to her successor funds that were deemed "property of the removed administrator," and which were not "assets . . . of the decedent"); *Stenswick v. Bowen*, 815 F.2d 519, 520-21 (9th Cir. 1987) (affirming grant of Rule 60 motion where court lacked jurisdiction and authority to award fees incurred during administrative proceeding because only the Secretary of the agency had power to award such fees).

void [under Rule 60(b)] if the hearing of evidence is a ***legal prerequisite*** to rendition of a valid default judgment" and where no such hearing was held) (emphasis added).[10]  In other words, the presence or absence of various conditions precedent binds a court's power to act, and orders or judgments overstepping the bounds of power are "void" under Rule 60(b)(4).

Geo does not suggest that a mere error in fact-finding as to one predicate element to the exercise of authority would render the resulting judgment "void."  *See, e.g.*, *Lubben*, 453 F.2d at 649.  Rather, voidness under Rule 60(b)(4) occurs, *inter alia*, where the procedural posture of the case unarguably precludes a court's exercise of power.  *Marques v. Federal Reserve Bank of Chicago*, 286 F.3d 1014, 1016-18 (7th Cir. 2002) (judgment on the merits was "unarguabl[y]" void where party previously filed for a Rule 41(a)(1) voluntary dismissal without prejudice); *Indoor Cultivation*, 55 F.3d at 1317 (default judgment entered in a civil forfeiture proceeding against seized vehicles was held void because the forfeiture proceeding was not brought within the statutorily required 60-day period); *Pacurar v. Hernly*, 611 F.2d 179, 180-81 (7th Cir. 1979) (dismissal ***with*** prejudice vacated because the district court only had power to dismiss with***out*** prejudice under Rule 41(b)).  Here, the procedural posture ***un***arguably precluded any judicial power to nullify the patents.  Indeed, this matter was not even the ***type*** of proceeding in which the patent nullification might be possible.  *See, e.g.*, *Hazel-Atlas*, 322 U.S. at 251.  There is no basis whatsoever for arguing that the precondition for a patent nullification order—*i.e.*, a direct proceeding brought by the government—existed here.  Because the Court lacked power to nullify Geo's licensed patents, the judgment against Geo is void and must be vacated.[11]

---

[10] *See also Burke v. Smith*, 252 F.3d 1260, 1266 (11th Cir. 2001) (affirming Rule 60(b)(4) vacatur of dismissal based on settlement where a "fairness hearing" was necessary to bind a minor to settlement and no such hearing had been held); *Carter v. Fenner*, 136 F.3d 1000, 1005-09 (5th Cir. 1998) (affirming Rule 60(b)(4) vacatur of consent judgment on grounds that underlying settlement did not comport with statutory requirement that settlement receive prior state-court approval); *United States v. Forma*, 42 F.3d 759, 768 (2d Cir. 1994) ("jurisdiction in taxpayer counterclaims is lacking for any affirmative awards if the taxpayers do not satisfy the usual prerequisites to maintaining an independent suit").

[11] Nor may it be said that the judgment represents permissible expansion of an equitable doctrine.  The "flexibility [of equity] is confined within the broad boundaries of traditional equitable relief.  To accord a type of relief that has never been available before—and especially (as here) a type of relief that has been specifically disclaimed by long-standing judicial precedent—is to invoke a 'default rule' . . . not of flexibility but of omnipotence.  When there are indeed new conditions that might call for a wrenching

## II.     Patent Nullification In This Case Violated the Excessive Fines Clause.

The Eighth Amendment renders unconstitutional the levying of "excessive fines." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (the clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'"). As explained by the Supreme Court, "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a [party's] offense." *Id*. at 335. Here, there can be no question that inequitable conduct is an "offense" and that imposition of the unenforceability decree in this case—to the extent it nullifies property above and beyond the barring of Nilssen's personal cause of action—is a forfeiture "penalty." *Akron Polymer Container Corp. v. Exxel Container, Inc.*, 148 F.3d 1380, 1383 (Fed. Cir. 1998).[12]

As to proportionality, the patent nullification penalty in this case is "grossly disproportional to the gravity" of Nilssen's alleged offenses. In *Bajakajian*, by comparison, the Supreme Court held unconstitutional the forfeiture of $342,144 in currency sought to be exported in violation of a reporting requirement. 524 U.S. at 324.[13] It reasoned that such forfeiture amounted to an unconstitutionally "excessive fine" because it was "grossly disproportional to the gravity of [the] defendant's offense." *Id*. at 334, 337-38. Even more so than the currency forfeiture at issue in *Bajakajian*, Geo's loss of its right to exclude infringers of valuable licensed patents constitutes a penalty that is utterly and grossly disproportional to the gravity of Nilssen's alleged offenses. The punishment wiped out a large portion of Nilssen's life's work, and a

---

departure from past practice, Congress is in a much better position than [the judiciary] both to perceive them and to design the appropriate remedy." *Grupo Mexicano*, 527 U.S. at 322. Indeed, the Supreme Court mandates a "cautious approach to equitable powers" and thus "leaves any substantial expansion of past practice to Congress." *Id*. at 329. Accordingly, imposing a nullification remedy here encroaches on the province of Congress—a clear usurpation of power—and the judgment is void for this reason as well. *See, e.g.*, *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000) (judgment usurping power is void).

[12] Had the judgment been merely personal to Nilssen, as opposed to extending also to the patents, then the Court's refusal to aid Nilssen could be described as a traditional exercise of judicial equity powers and not as a punitive forfeiture. But this judgment ***also*** effected a forfeiture of patents.

[13] The district court there imposed a fine of only $15,000 (less than 5% the total amount), and the government appealed, arguing that the statute in question required a total forfeiture. *Id*. at 326.

- 9 -

licensing-revenue stream worth hundreds of millions of dollars to Geo.[14]   Yet, none of Nilssen's alleged wrongful conduct in fact affected the validity of any claim of any of the four patents at issue here; at worst, Nilssen temporarily saved less than $10,000 in maintenance fees before correcting the alleged underpayments.  (*See* Ex. 10).   Indeed, it is difficult to imagine a more compelling example of a punishment that does *not* fit the "crime."   Because the levying of such an "excessive fine" exceeded the Court's power, the judgment against Geo is void on this basis as well.   *See Simer v. Rios*, 661 F.2d 655, 663 (7th Cir. 1981) ("[W]here an error of constitutional dimension occurs, a judgment may be vacated as void."); *Crosby v. Bradstreet Co.*, 312 F.2d 483, 485 (2d Cir. 1963) (affirming Rule 60(b)(4) grant of relief from order that violated First Amendment because "court was without power to make such an order").

## III.    Patent Nullification Violates the Takings Clause.

The Fifth Amendment prohibits the taking of private property for public use without just compensation.  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005).   **First**, patents are unquestionably a form of private property.  *See, e.g.*, *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 392 (2006).   There can be no dispute that, at the time of the judgment, Geo owned substantial valuable property rights (e.g., the exclusive right of enforcement) under these unquestionably valid patents.   **Second**, Geo's patent-exclusionary rights were completely taken without **any** compensation.   Indeed, the nullification placed the claimed inventions in the public domain for all (including the government) to exploit royalty-free.  *See Lingle*, 544 U.S. at 538 ("government requir[ing] an owner to suffer a permanent physical invasion of her property" constitutes a "*per se* taking for Fifth Amendment purposes"); *Hughes Aircraft Co. v. United States*, 86 F.3d 1566, 1571 (Fed. Cir. 1996) ("The government's unlicensed use of a patented invention is properly viewed as a taking . . .."), *vacated on other grounds, United States v. Hughes Aircraft Co.*, 520 U.S. 1183 (1997).   The failure to provide just compensation to Geo

---

[14] Conservatively assuming total annual CFL sales to be 300 million units, at an average sales price of $3 per unit and a 5% royalty on sales, Geo would, through licensing the CFL patents, stand to receive revenues of at least $45 million per annum for many years to come.

precludes power to take the patents, *see Lingle*, 544 U.S. at 536,[15] and renders void the judgment nullifying Geo's licensed patents. *See Simer*, 661 F.2d at 663; *Crosby*, 312 F.2d at 485.

## IV. The Judgment Against Geo Violates Separation Of Powers For Failure To Confine The Definition Of "Materiality" To That Which Is Prescribed By Rule 56.

The barring of Geo's cause of action also is "void" on grounds that the conduct attributed to Nilssen in no way met the materiality standard set forth in Rule 56.

As an initial point, Geo of course recognizes and agrees that parties dealing with the PTO must be truthful about all matters, ***regardless of materiality***:

> By presenting to the [Patent] Office . . . any paper, the party presenting such paper . . . is certifying that . . . [a]ll statements made therein of the party's own knowledge are true, and all statements made therein are made with knowledge that whoever, in any matter within the jurisdiction of the [Patent and Trademark] Office . . . makes ***any*** false, fictitious, or fraudulent statements or representations . . . ***shall*** be subject to the penalties set forth in 18 U.S.C. 1001….

37 C.F.R. §11.18 (emphasis added). Breach of this blanket duty of candor can result in severe penalties, including monetary fines and imprisonment. *See* 18 U.S.C. §1001. But not all intentionally false statements warrant the penalty of patent unenforceability:

> To find a patent unenforceable for inequitable conduct, there must be clear and convincing evidence that the applicant (1) made an affirmative misrepresentation of ***material*** fact, failed to disclose ***material*** information, or submitted false ***material*** information, ***and*** (2) ***intended to deceive the PTO***.

*Research Corp. Techs., Inc. v. Microsoft Corp.*, 536 F.3d 1247, 1252 (Fed. Cir. 2008) (emphasis added). Indeed, a finding of inequitable conduct based only on intentional falsity, without regard for materiality, constitutes legal error. *See, e.g.*, *id.*

In 1977, the PTO promulgated the "reasonable examiner" standard of materiality, whereby information was deemed "material" if there was "a substantial likelihood that a

---

[15] The only potential remaining issue is whether a decree by the federal judiciary can be said to violate the Takings Clause, an issue which has not been directly addressed by any case law of which Geo is aware. That said, each of the other clauses of the Fifth Amendment has been found to restrain the judiciary in some respect. *See* Ex. 11, W. David Sarratt, Note, *Judicial Takings and the Course Pursued*, 90 VA. L. REV. 1487, 1498, n.47 (2004) (reciting as limits on the judiciary the grand jury requirement, proscriptions on double jeopardy and self-incrimination, as well as the Due Process Clause). And judicial takings have also been recognized. *See Hughes v. Washington*, 389 U.S. 290, 296-98 (1967) (Stewart, J., concurring); *Ultimate Sportsbar, Inc. v. United States*, 48 Fed. Cl. 540, 550 (2001). Thus, there is no principled reason to immunize the judicial nullification of patents from the Takings Clause.

reasonable examiner would have considered [the information] important in deciding whether to allow the application to issue as a patent." *Digital Control*, 437 F.3d at 1315. This "reasonable examiner" standard subsumed other materiality tests applied in the federal common law. *See id*. But by the late 1980s, "the habit of charging inequitable conduct in almost every major patent litigation ha[d] become an absolute plague." *Burlington Indus. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988). Fully cognizant of the "burden of litigation on the question of inequitable conduct before the [PTO]," the PTO sought to "minimize" that burden while at the same time ensure that the PTO would receive "information necessary for effective and efficient examination of patent applications." Ex. 12, 57 Fed. Reg. 2021, 2023 (Jan. 17, 1992) (to be codified at 37 C.F.R. §1.56). Consequently, the PTO in 1992 amended Rule 56 to "clarify the duty of disclosure," *id*. at 2021, by "provid[ing] greater clarity" in the definition of "materiality," *id*. at 2023, and, in so doing, "strike a balance between the need of the Office to obtain and consider all known relevant information pertaining to patentability before a patent is granted and the desire to avoid or minimize unnecessary complications in the enforcement of patents." *Id*. at 2021. As amended, Rule 56 defines "material" information as that which: "(1) . . . establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim; or (2) . . . refutes, or is inconsistent with, a position the applicant takes in: (i) [o]pposing an argument of unpatentability relied on by the Office, or (ii) [a]sserting an argument of patentability." 37 C.F.R. § 1.56(b).

As confirmed, *inter alia*, by PTO reexamination proceedings, (*see supra*, at p. 4), because none of the conduct at issue here had any bearing on patentability, that conduct fails to satisfy the Rule 56 standard for materiality. Indeed, the mere existence of *Motorola* could not have rendered any claim *prima facie* unpatentable, nor could its disclosure have refuted any position taken by Nilssen. No priority claim to 1978 could have affected patentability because none was ever asserted to avoid references cited against any affected patent. Moreover, post-issuance assertions of small entity status certainly do not constitute "an argument of patentability." *Id*. As the Federal Circuit acknowledged, "misrepresentation of small entity status is ***not*** strictly

- 12 -

speaking inequitable conduct in the prosecution of the patent [because] the patent has ***already issued***." *Osram*, 504 F.3d at 1231 (emphasis added).

Had the PTO's test for "materiality" been faithfully applied, no "materiality" could have been found, and no findings of unenforceability could have resulted. The findings that were made can only be explained because the courts instead applied broader, far more inclusive, materiality standards. *See Osram*, 440 F. Supp. 2d at 899 (referencing the former "reasonable examiner" standard as a test for "materiality"). The failure here to limit "materiality" to the scope defined by PTO Rule 56, however, violates separation of powers because the PTO's "materiality" regulation is "legally binding" on the courts. *See Long Island Care At Home, Ltd. v. Coke*, 551 U.S. 158, 165 (2007) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984)).[16] It is a matter for the PTO to set or reset the materiality standard as an exercise of Congress' delegation of authority. *Chevron*, 467 U.S. at 863-64 (The agency "must consider . . . the wisdom of its policy on a continuing basis."). Recognizing that its previous definition of "materiality" contributed to the burden of inequitable conduct claims in litigation, the PTO clarified the definition of "materiality" in Rule 56 in 1992. Courts were thereafter bound to respect that policy decision, irrespective of precedent applying different standards. *See, e.g.*, *Nat'l Cable & Telecommunications Assoc. v. Brand X Internet Services*, 545 U.S. 967, 982-83 (2005); *City of Milwaukee*, 451 U.S. at 315, 317. Because the findings of inequitable conduct at issue here rest on a failure to defer properly to the PTO's "materiality" standard—a standard to which Nilssen adhered during prosecution of the four patents addressed herein—those findings violate separation of powers (by usurping legislative power properly delegated to the PTO), and the judgment against Geo is consequently void. *See, e.g.*, *Tittjung*, 235 F.3d at 335.

---

[16] "Because the Patent Office is specifically charged with "administering statutory provisions relating to 'the conduct of proceedings in the Office,' . . . [the Federal Circuit] give[s] *Chevron* deference to its interpretations . . . ." *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1337 (Fed. Cir. 2008).

**V.      Nilssen's Conduct Cannot Confer Article III Standing On Defendants.**

Nilssen's conduct did not create an "unclean hands" injury cognizable under long-standing equity jurisprudence, and, therefore, did not confer Article III standing on defendants to seek any remedy based on that conduct.  Under Article III of the Constitution, the exercise of judicial power is confined to deciding "Cases" and "Controversies" between the parties before the court.  *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The requirement of standing under Article III assures "there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party."  *Schlesinger v. Reservists Comm. To Stop The War*, 418 U.S. 209, 221 (1974).  Thus, Article III standing requires an "injury in fact" that is "fairly traceable" to the complained-of conduct.  *Lujan*, 504 U.S. 555 at 560 (internal citations omitted).  To establish an unclean hands injury, the Supreme Court requires an "unconscionable act" having an "***immediate and necessary relation***" to "the matter in litigation." *Keystone Driller*, 290 U.S. at 245; *accord*, Pomeroy, § 399, at 659.  Accordingly, no cognizable injury for standing purposes can result where the challenged conduct had no bearing on the rights being asserted in litigation.

In this case, because the alleged inequitable conduct bore no relation to the validity or duration of any claim at issue, Nilssen's conduct did not "in some measure affect[] the equitable relations subsisting between" ***Geo*** and the defendants.  Pomeroy, § 399, at 659.  As explained above (and also confirmed by PTO reexamination proceedings), Nilssen's conduct must be deemed ***im***material under Rule 56, (*see supra* at §IV), and certainly did not bear the requisite "immediate and necessary relation" to the validity of patent claims Geo now seeks to assert.

Nor may the duration of those claims be cut short on grounds of bad faith in the underpayment or correction of maintenance fees.  *Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*, 351 F.3d 1139, 1149-50 (Fed. Cir. 2003).  In *Ulead*, the Federal Circuit expressly confirmed the absence of jurisdiction to declare a patent lapsed in such circumstances, *id.* at 1150, even while it recognized authority to refuse assistance to the party who had committed bad faith in correcting a maintenance fee payment.  Here, because Geo committed no act of bad faith,

no such equitable decree against it could stand, and the duration of the patents could in no way be shortened by Nilssen's alleged bad faith.

To be sure, inequitable conduct jurisprudence no longer maintains the "immediate and necessary relation" requirement of an unclean hands injury. *See, e.g., Scanner Techs. Corp. v. ICOS Vision Sys., N.V.*, 528 F.3d 1365, 1375 (Fed. Cir. 2008) (citing *Osram*, 504 F.3d at 1231, and noting that materiality may be found where "the alleged inequitable conduct [did not bear] directly on patentability of the claims"). Nor is the inequitable-conduct doctrine any longer limited to conduct during prosecution, as was historically the case. *See Ulead*, 351 F.3d at 1144. By jettisoning these traditional limits on equity, the Federal Circuit now permits remedies having nothing to do with protecting any direct interest of the accused infringer. This "***wrenching departure*** from past practice" in equity is one which "***Congress is in a much better position***" to effect. *Grupo Mexicano*, 527 U.S. at 322 (emphasis added); *see also eBay*, 547 U.S. 391-92.[17] As such, the inequitable-conduct findings at issue here rest on separation-of-powers violations. *See Grupo Mexicano*, 527 U.S. at 329.

Had separation of powers not been violated, the defendants in this case could not have had standing to procure the unenforceability decrees against Geo for the four patents at issue. For this reason as well, the judgment against Geo is void. *See, e.g., Indoor Cultivation*, 55 F.3d at 1316 ("Under the typical formulation, a judgment is void for purposes of Rule 60(b)(4) if the court that rendered it lacked jurisdiction over the subject matter…." (quotations omitted)).

## CONCLUSION

For the foregoing reasons, Geo respectfully requests that the Court vacate its judgment to the extent it bars Geo from enforcing the '270, '123, '680 and '464 patents.

---

[17] Federal Circuit Judge Linn also recently noted that the Federal Circuit "has ***significantly diverged from the Supreme Court's treatment of inequitable conduct*** and perpetuates what was once referred to as a 'plague'…." *Larson Mfg. Co. of South Dakota, Inc. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1342 (Fed. Cir. 2009) (Linn, J., concurring) (emphasis added).

Dated:  November 19, 2009                                   Respectfully submitted,


                                                    By:     /s/ Leland W. Hutchinson, Jr.

                                                           Attorney for Plaintiff
                                                           GEO FOUNDATION, LTD.


Leland W. Hutchinson, Jr.
Jonathan Hill
David L. Ter Molen
Matthew J. Kramer
Freeborn & Peters, LLP
311 South Wacker, Suite 3000
Chicago, IL 60606
(312) 360-6000

- 16 -

## CERTIFICATE OF SERVICE

The undersigned counsel for plaintiffs hereby certifies that on November 19, 2009 a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF RULE 60(B)(4) MOTION FOR RELIEF FROM JUDGMENT** was filed electronically with the Clerk of the court through the Court's CM/ECF System which will provide electronic notification of such filing to the following counsel of record for Defendants:

Margaret M. Duncan
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, IL 60606

Anthony J. Fitzpatrick
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210

Kimball R. Anderson
Kathleen B. Berry
Winston & Strawn LLP
34 West Wacker Drive
Chicago, IL 60601

Gary W. Smith
Posternak Blankstein & Lund LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199


_____/s/_____Leland W. Hutchinson, Jr._____